136 So.2d 165 (1961)
Clyde T. MURRY, Plaintiff-Appellant,
v.
SOUTHERN PULPWOOD INSURANCE COMPANY, Defendant-Appellee.
No. 433.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1961.
Rehearing Denied January 15, 1962.
W. T. McCain, Colfax, for plaintiff-appellant.
Hiram J. Wright, Winnfield, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
*166 TATE, Judge.
This is a suit by an injured employee to recover workmen's compensation benefits from his employer's insurer. The claimant appeals from judgment awarding him compensation for temporary total disability and for loss of a finger, and also awarding him statutory penalties for the arbitrary nonpayment of compensation.[1]
By his appeal, the plaintiff principally contends that the award should be for total and permanent disability, that is, for 400 weeks during disability; and he asks for a greater amount of penalty attorney's fees.
The evidence shows that the plaintiff Murry was employed by the defendant's insured to cut and haul pulp wood logs. Murry's remuneration was sufficient to entitle him to receive workmen's compensation during disability at the maximum statutory rate of $35 weekly. The end of the middle finger of Murry's left hand was crushed at work on August 10, 1960.
Murry was treated by the employer's physician through January 7th, 1961, when he was discharged for return to work as having reached maximum improvement. The preponderance of the medical evidence also shows that, as a residual from the injury, the end of the injured finger is extremely sensitive and painful to touch, and that the injured finger itself is stiffened and greatly restricted in motion, so that the plaintiff has suffered a loss of grip in the left hand. The medical witnesses relied upon by the defendant to show no residual disability, a general practitioner and an orthopedist, did not, in evaluating disability, seem to take into consideration the extreme sensitivity of the end of the injured finger (see e.g., Tr. 153, 157), exceedingly red in comparison to the normal appearance of the other skin; their testimony does not preponderate over that of the other medical witnessesan orthopedist, a neurosurgeon, and a general physicianconcerning the loss of function of the hand through the pain fulness upon use and the stiffness of the injured finger.
The preponderant medical evidence also shows that this residual disability may probably be relieved by amputation preferably of the entire metacarpal bone from its base near the wrist together with the entire injured finger.
The trial court awarded the plaintiff compensation for temporary total disability between August 10, 1960 (the date of the accident) and January 7th, 1961 (the date of the plaintiff's discharge by the company physician). In addition, the plaintiff was awarded an additional twenty weeks compensation beyond January 7th, for the total loss of the injured finger under the specific loss schedule, LSA-R.S. 23:1221(4) (c).
The plaintiff contends, correctly we think, that our learned trial brother was in error in not awarding additional compensation for total and permanent disability instead of only for the loss of the finger. At the time of trial, due to the loss of use of the left hand because of loss of grip and the extreme sensitivity of the injured finger, the claimant was unable to perform the duties of the occupation in which injured, which the evidence shows required the use of both hands in cutting and handling the logs and in using the tools of the occupation.
Our settled jurisprudence is that "whenever the worker can show that he was wholly or partially disabled he is entitled to compensation for the period provided in the disability provisions of the Act, even though his disability arose from one of the specific losses set forth in the schedule," Malone, Louisiana Workmen's Compensation Law and Practice (1951), Section 279, p. 352. Our courts have thus consistently *167 awarded compensation for total disability to logging and other employees when, through residual injury to one or more fingers, the employee's loss of use of his hand prevents him, through substantial pain or otherwise, from being able to perform the usual and customary duties of the occupation in which injured. Bean v. Higgins, 230 La. 211, 88 So.2d 30; Viator v. Hub City Contractors, Inc., La.App. 1 Cir., 116 So.2d 878; Green v. Harper, La.App. 2 Cir., 103 So.2d 474; Todd v. Sunnyland Contracting Co., La. App. Orl., 85 So.2d 537; Scott v. Fulton Bag & Cotton Mills, La.App.Orl., 65 So.2d 397.
Although a total disability might be relieved by an operation, nevertheless a disabled plaintiff's compensation may not be limited or terminated upon the speculation that such unperformed operation might end the disability. Sumrall v. J. C. Penney Co., 239 La. 762, 120 So.2d 67; Duplechien v. States Exploration Company, La.App. 1 Cir., 94 So.2d 460, Leday v. Lake Charles Pipe & Supply Co., La.App. 1 Cir., 185 So. 655. As the Supreme Court recently stated in the cited Sumrall decision, "even though an employer may have cause to believe that the employee's disability may be removed by surgery, the employer cannot ex parte terminate the payment of compensation upon the refusal of the employee to submit to surgery * * *. The question whether an employee's refusal to submit to surgery is reasonable is not a medical question, but a legal question to be determined by the court under the facts and circumstances of each case, and the burden is on the employer to obtain judicial determination of the necessity of surgery * * *." 120 So.2d 70.
Further, the legal question as to whether an employer's liability to his injured employee may be limited by remedial surgery is not even presented to the courts until after the employer has made a firm tender of the medical treatment in question. Wade v. Calcasieu Paper Co., La.App. 1 Cir., 95 So.2d 725, certiorari denied; Benefield v. Zach Brooks Drilling Co., La.App. 2 Cir., 59 So.2d 710. As stated in the latter decision, "It is only in the event of the refusal of an employee to submit to a tender of surgical procedure that the matter becomes a question of judicial concern," 59 So.2d 711.
Thus, in the present instance, the employer has never tendered the surgical procedure which might relieve the employee's disability. We cannot limit the disabled claimant's right to receive weekly compensation during his disability upon the speculation that an as yet untendered and unperformed operation might relieve it.
As to penalties, the record supports the trial court's determination that the defendant's complete failure to pay any compensation whatsoever to this disabled employee following the accident and up through the trialdespite repeated demands, the initial reports of its assured's physician showing disability, and the institution of suitwas entirely without justification. The trial court correctly held the defendant insurer liable for attorneys' fees and penalties of 12% on all unpaid compensation, for such arbitrary non-payment of workmen's compensation benefits. LSA-R.S. 22:658.
The trial court awarded only $500 attorney's fees, however, and by his appeal the plaintiff requests that this amount be increased to $1000. Even a greater increase in attorneys' fees, had it been requested, is justified under the jurisprudence by the representation reflected by the record before us, and we will therefore amend the judgment to award the requested $1000 penalty attorney fee. See, e. g., Cain v. Employers Cas. Co., 236 La. 1085, 110 So.2d 108; Fontenot v. Travelers Insurance Co., La. App. 3 Cir., 125 So.2d 664; Monk v. Louisiana Forestry Commission, La.App. 3 Cir., 124 So.2d 351. In compensation suits, these penalty attorney's fees have been consistently allowed by the courts even without specific proof of the reasonable valuation, under the apparent principle that the courts *168 themselves under whose eyes the work is performed have an adequate basis for the allowance (See Finn v. Delta Drilling Co., La.App. 1 Cir., 121 So.2d 340, certiorari denied, where this point is raised); although, we suppose, the preferable practice would be to educe testimony as to the reasonable value of such services.
Finally, by his appeal the claimant also seeks reimbursement for the expenses of making 21 visits to the company physician, whose office is twenty miles from the claimant's home, for purposes of medical treatment. The travelling expenses connected with medical treatment, including reimbursement for the use of the injured claimant's car at so much per mile, is indeed a proper item of recovery as part of the cost of medical treatment. See, e.g., Walters v. General Accident & Fire Assur. Corp., La. App., 119 So.2d 550, 560-561, certiorari denied. However, although the claimant proved that he was treated at the physician's office on over twenty occasions, there is no proof that these visits occasioned him any expense by use of his own car (nor of the appropriate mileage cost) or otherwise. The trial court correctly disallowed any recovery for such unproved expense.
For the foregoing reasons, the trial court judgment is amended so as to award the plaintiff compensation at the rate of $35 per week, commencing August 10th, 1961, for a period not to exceed four hundred weeks, less a credit for the defendant's payment of any compensation since the judgment, together with legal interest upon each unpaid weekly installment from date of delinquency; in addition, the defendant insurer is cast for penalties of 12% on all weekly payments now overdue more than sixty days, with like penalty upon such payments as may in the future become overdue more than sixty days, together with attorney's fees payable to the plaintiff in the amount of one thousand dollars. The plaintiff's right is reserved to recover future medical expenses in connection with the amputation of his injured finger. All costs of these proceedings and of this appeal are assessed against the defendant-appellee.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] The defendant had also appealed, but it failed to perfect its appeal by filing a bond; the defendant's appeal was previously dismissed by us because of the non-payment of the filing fee. See 133 So.2d 827, decided September 20, 1961, by this court.