TATE, Judge
(concurring in part, dissenting in part).
I concur insofar as the majority found that the employee was disabled by reason of accident while employed by the defendant and insofar as penalties were assessed for the arbitrary non-payment of medical expenses. But I must respectfully dissent from the majority’s refusal to award compensation for disability beyond September 27, 1960.
The majority has thus limited weekly compensation because on August 5, 1960, the attending orthopedist estimated that, with a return to work, the employee’s disability should be ended eight weeks later. As a matter of fact, however, the employee was still disabled at the time of the trial on February 14, 1961, some six months after this medical guess as to the duration of future disability; and this same attending physician still found the plaintiff to be disabled on the next two examinations prior to trial, on December 8, 1960 and February 9, 1961. (This physician specifically stated that the manifestation of disability then exhibited by the plaintiff on the eve of the trial, dated back to the initial trauma which caused the fracture, accepting the plaintiff’s subsequent complaints of pain, which were corroborated by the lay witnesses. Tr. 289).
The trial court, in my opinion, correctly found: “The evidence establishes that his disability, as of the date of trial, is total and causally connected with the accidents in the employ of defendant, with an indefinite period of recovery. Some of the medical experts expressed the opinion that Mr. McGee could return to heavy manual labor, but not without some pain and discomfort attributable to the accident in defendant’s employ. The jurisprudence establishes that a worker will not be required to resume his former employment, if performance of duties in that employment would cause him pain and discomfort of any substantial nature.”
*412 So dissenting, I fully concede the forcefulness of the views expressed by the fair-minded majority opinion and that there is much seeming equity in such result. Nevertheless, I do not think that compensation should be denied an employee, admittedly disabled at the time of trial from the performance of the hard work in which injured at the time of the accident, simply because of a speculation that the employee might have recovered his ability to perform hard work in six or eight weeks if he had returned to it and gradually increased his exertions.
This result is contrary to the established jurisprudence. As a precedent, it may accomplish much mischief,, disrupting the present practice of employers continuing to pay compensation to injured employees so long as disabled, rather than terminating compensation to disabled employees until after the court decides whether or not the disability might have been terminated earlier.
(It should be noted that the employer is not substantially prejudiced by a judgment awarding an injured employee compensation for total disability, because the employer may always reopen the judgment, when— and if — the employee’s disability is ended.)
I.
In the first place, despite the theoretical medical opinion, in fact the employee continued to perform light janitorial work and has been engaged in it from the accident up until the trial of February 14, 1961. If work therapy were actually so beneficial, I am unable to see why the constant motion and the performance of the lighter tasks should not have resulted in an improvement of the employee’s condition, when in fact it did not do so.
As Judge (later Justice) Odom long ago commented under similar circumstances, when refusing to limit compensation to a specified period for an employee actually disabled at the time of trial: “The court must not speculate as to how long a person will be disabled. The greatest experts in the land cannot tell how long it will take a wound to heal. They can no more do that than a surgeon can tell whether an operation will prove fatal or be a success. Any opinion which might be given by a physician as to how long a patient will be disabled from a certain wound or condition of a member of the body would necessarily be speculative. An expert might be able to guess more accurately than a layman, but his opinion would be a guess after all.” O’Donnell v. Fortuna Oil Co., 2 Cir.,, 2 La.App. 462 (1925), 464.
This principle I thought, previously to-the recent decision of another circuit relied upon by the majority, had become a settled rule in workmen’s compensation proceedings. Contemporaneously with the decision relied upon, in fact, the First Circuit had rejected contentions similar to those here accepted by the present majority, when in Cummings v. Albert, La.App., 86 So.2d 727, 729 (certiorari denied), the court stated:
“As to defendants’ related defense based on the testimony of Dr. Mosely, that if Cummings tried light work,, his working ability should or might return despite his present residual disability, we stated in Watson v. Floyd Electric Company, Inc., La.App. 1 Cir., 75 So.2d 361, at page 365 (writ denied), rejecting similar contention:
“ ‘The question to be determined is whether or not the plaintiff, at the time he refused to accept light work or the employer refused to give him light work, was able to do and perform the type of work that he was doing at the time of the alleged accident.’
“Or as stated by our brothers of the Second Circuit in Brown v. International Paper Co., La.App., 58 So.2d 557, at page 560:
“ ‘Defendant relies largely on the medical testimony of Doctors Hamilton and Rawls, both of whom were of the *413 opinion that plaintiff's condition was such that if he did engage in light work, it would restore full function of his arm within six weeks, and at most, twelve weeks. But the test is not whether a plaintiff in a compensation case is able to do light work, but is whether or not he is able to do the same work he was doing when injured, or similar work, and we are not to speculate on the time it would require for his recovery or in fact whether he would recover at all, especially in the face of the conflicting medical testimony.’ ”
If a disabled employee’s right to compensation is under the present circumstances limited to the physician’s estimate of the time it would take for the employee to recover if he returned to work, the employee is in fact faced with an impossible situation. Leaving aside the reluctance of many employers to hire any man who has had back trouble in the past even when he was completely recovered from it, we must recognize the practical difficulty in the way of the employee if he seeks to carry out the physician’s advice.
Here, for instance, the injured employee must ask for a job in these terms:
“Dear Mr. Would-Be Employer:
“I have recently had a rather serious back injury, but my doctor tells me that, although I am still disabled and will suffer pain when I work, I will nevertheless recover my former ability to perform hard duties in six to eight weeks if I go back to work.
“I am therefore applying for a job with you, not only to provide food for my family, but also because this work over a period of six to eight weeks will very probably (my doctor says) result in my recovery. Of course, during the first weeks you must give me only the lighter duties, gradually increasing the range of my work until I finally am able to perform my full work without pain.
“I will appreciate your favorable consideration,
“Yours respectfully,
“A. Claimant.”
If he replied at all, of course, the employer would probably reject the application and reply that he is in business to make a profit and not to provide medical therapy. (And it is to be wondered why some sort of supervised physical therapy could not accomplish the same results as the work-therapy, if indeed the employee’s recovery of his ability to work could be accomplished so readily, and why the employer did not tender same.)
II.
Aside from its application of the incorrect legal standards and its conflict with the opinions of the First and Second Circuits, I think the majority opinion has not realistically viewed the employee’s complaints of continued pain with relation to his work record prior and subsequent to the accident.
Following recovery from the effects of his 1947 accident, the claimant was able to return to his usual occupation of operating engineer in July of 1957. At the time of the accident he was paid $3.30 per hour, with weekly earnings in excess of $130.00.
In addition, one year before the present accident, the claimant secured part-time evening employment as a janitor. (The earnings-he thus received were in addition to his substantial wages as an operating engineer and welder.) Following the accident, the claimant was able to perform only his janitorial duties, and, according to his co-workers, only the lighter ones as compared to his ability prior to the industrial accident, needing help after the accident with lifting of furniture and other heavier duties.
It seems to me that, unmistakably, we have here an individual who, before the accident, was ambitious enough to secure part-time work additional-to his highly paid job as an operating engineer. It he were not disabled, it is almost inconceivable to me *414 that he would voluntarily renounce high earnings of over $130.00 per week, just for the disputed right to receive weekly compensation of $35.00.
I may add that the suggestion that the preponderance of the medical evidence does not support disability is, it seems to me, contrary to the established jurisprudence, which is to the effect that disability is not determined by the number of medical opinions, but rather by the opinions of those doctors who are especially well qualified to ascertain the truth of the question, allowing weight to lay testimony in the event of conflicting medical evidence.
Here both attending physicians were firmly of the opinion that the plaintiff had sustained a compression fracture in his injury of December, 1959; they had opportunity to see the plaintiff many times, to ascertain the consistency of his complaints over an extended period of time, and to determine whether these complaints, in connection with x-ray any other obj ective findings, supported their medical diagnoses. These medical opinions of continued disability are corroborated by the uncontradict-ed lay testimony.
To me, it seems to be naive to say that a couple' of radiologists who viewed x-ray pictures could just by them determine that there was no compression fracture, when other qualified physicians examining x-rays of the back at the time of and after the accident, reached the opposite conclusion, taking into account the plaintiff’s history and complaints immediately after the injury and following.
After all, x-ray pictures are just a tool to help in medical diagnosis; they should not be substituted for the fully considered and carefully weighed opinion of an attending orthopedist, when the latter has, in addition to the blurred markings on the x-rays, been able to consider the consistent complaints and other symptoms of a living, breathing human being over an extended period of time.
Likewise, the opinion of a medical expert who examined the claimant only once or twice, and then only in connection with the litigation, is obviously entitled to far less weight than the considered opinion of the attending physicians who saw and treated the claimant many times over an extended period.
III.
It is also to be noted that because of the work-caused condition the employee actually incurred substantial medical .expenses, including for a brace, which the majority disallows because incurred after the cut-off date of the theoretical end of the disability (as if the injured employee had been able to secure employment and as if the return to work had resulted in the end to the employee’s disability within the estimated time). While the majority’s disallowance of further medical expenses beyond the cut-off date is certainly logical, accepting its initial premise that the compensation should be limited to eight weeks beyond the date of the physician’s estimate, nevertheless in my opinion the Louisiana compensation act requires that the employee be furnished such actually incurred and reasonable medical expenses undeniably resulting from the injuries received at work, irrespective of whether the employee is still entitled to disability compensation. LSA-R.S. 23 :- 1031, 1203.
In summary, therefore, while fully recognizing that there is much merit in the majority’s views, I am unable to concur in them and therefore must respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents.